1
2
3
4
5        UNITED STATES DISTRICT COURT
6       SOUTHERN DISTRICT OF CALIFORNIA
7

| | |
|---|---|
| 8   TOMMY PEDRO DONES, | Case No.:22cv282-MMA(BLM) |
| 9         Petitioner, | **REPORT AND RECOMMENDATION FOR ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| 10   v. | |
| 11   KATHLEEN ALLISON, | **[ECF No. 1]** |
| 12        Respondent. | |

13

14    This Report and Recommendation is submitted to United States District Judge Michael M.

15 Anello pursuant to 28 U.S.C § 636(b) and Civil Local Rules 72.1(d) and HC.2 of the United States

16 District Court for the Southern District of California.  On March 1, 2022, Petitioner, Tommy Pedro

17 Dones, a state prisoner proceeding *pro se* commenced these habeas corpus proceedings

18 pursuant to 28 U.S.C. § 2254.  ECF No. 1 ("Pet.").  Petitioner challenges the validity of his state

19 court conviction for committing a lewd and lascivious act upon a child with enhancements.  See

20 Pet.  Respondent answered on June 1, 2022.  ECF No. 5-1 ("Ans.").  Petitioner's Traverse was

21 filed on August 29, 2022.  ECF No. 9 ("Trav.").

22    This Court has considered the Petition, Answer, Traverse, and all supporting documents

23 filed by the parties.  For the reasons set forth below, this Court **RECOMMENDS** that Petitioner's

24 Petition for Writ of Habeas Corpus be **DENIED**.

25           **FACTUAL BACKGROUND**

26    The following facts are taken from the California Court of Appeal's October 5, 2021

27 opinion.  Lodgment 6.  This Court presumes the state court's factual determinations to be

28 correct, absent clear and convincing evidence to the contrary.  28 U.S.C. § 2254(e)(1); Miller-El

v. Cockrell, 537 U.S. 322, 340 (2003); see also Parke v. Raley, 506 U.S. 20, 35 (1992) (holding findings of historical fact, including inferences properly drawn from such facts are entitled to statutory presumption of correctness).

> In February 2019, a criminal investigation was initiated after Tommy Dones's infant daughter was diagnosed with gonorrhea. Dones was in contact with his daughter in the days before she was diagnosed, and he also tested positive for gonorrhea. Dones admitted during an interview with the investigating officer that his penis unintentionally touched his daughter while he was in the shower with her. Dones's aunt also provided a statement during the investigation, claiming Dones had a history of sexually abusing his family members.

> The district attorney's office filed charges against Dones and a preliminary hearing was held, during which the prosecution presented testimony from the pediatrician who examined Dones's daughter and determined she contracted gonorrhea through sexual contact. On January 21, 2020, Dones pleaded guilty to Penal Code section 288, subdivision (a), lewd act on a child with enhancements for Penal Code section 12022.7, subdivision (d), great bodily injury on a child under 5 and Penal Code section 1203.066, subdivision (a)(8), substantial sexual conduct on a child under 14. The terms of the plea bargain included a stipulated sentence of 10 years in prison and the dismissal of the count for Penal Code section 288.7, subdivision (a), which carried a sentence of 25-years-to-life. Dones was sentenced on February 21, 2020, to the stipulated term of 10 years in prison. Dones did not appeal the judgment of conviction.

Lodgment 6 at 1-2.

## **PROCEDURAL BACKGROUND**

On June 10, 2021, Petitioner filed a Petition for Writ of Habeas Corpus in the superior court asserting three claims for relief.  Lodgment 1.  Specifically, Petitioner alleged that (1) he was denied the effective assistance of counsel, (2) he was innocent, and (3) his rights were violated due to prosecutorial misconduct when the prosecution failed to correct materially false testimony and withheld exculpatory evidence.  Id.  The court denied relief on July 29, 2021 finding that "Petitioner [] failed to make a prima facie showing of specific facts which would entitle him to habeas corpus relief under existing law."  Id.

On August 24, 2021, Petitioner file a "Traverse Order for Denying Petition for Writ of

Habeas Corpus" in superior court.  Lodgment 3.  On August 25, 2021, the Court denied the second petition as successive and again noted that "Petitioner [] failed to make a prima facie showing of specific facts which would entitle him to habeas corpus relief under existing law." Lodgment 4.

On September 1, 2021, Petitioner's Petition for Writ of Habeas Corpus was electronically filed in the California Court of Appeal.  Lodgment 5.  The petition raised the same three claims as his previous petitions, that (1) he was denied the effective assistance of counsel, (2) he was innocent, and (3) his rights were violated due to prosecutorial misconduct when the prosecution failed to correct materially false testimony and withheld exculpatory evidence.  Id.  On October 5, 2021, the court denied the petition finding that it was procedurally barred, untimely, and lacking on the merits as Petitioner did not provide any evidence of ineffective assistance of counsel and did not provide any new evidence establishing his innocence.  Lodgment 6.

On October 14, 2021, Petitioner filed a Petition for Review in the California Supreme Court with the same three claims from his previous petitions.  Lodgment 7.  On December 1, 2021, the California Supreme Court summarily denied Petitioner's petition for review.  Lodgment 8.

## STANDARD OF REVIEW

Title 28 of the United States Code, section 2254(a), sets forth the following scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

The Petition was filed after enactment of the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214.  Under 28 U.S.C § 2254(d), as amended by AEDPA:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any

3

claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  In making this determination, a court may consider a lower court's analysis. Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991) (authorizing a reviewing court to look through to the last reasoned state court decision).  Summary denials are presumed to constitute adjudications on the merits unless "there is reason to think some other explanation for the state court's decision is more likely." Harrington v. Richter, 562 U.S. 86, 99-100 (2011).

A state court's decision is "contrary to" clearly established federal law if the state court: (1) "applies a rule that contradicts the governing law set forth in [Supreme Court] cases"; or (2) "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000).

A state court's decision is an "unreasonable application" of clearly established federal law where the state court "'identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (quoting Williams, 529 U.S. at 413).  "[A] federal habeas court may not issue [a] writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must be objectively unreasonable." Id. at 75-76 (citations and internal quotation marks omitted).  Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412.

If the state court provided no explanation of its reasoning, "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's

decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme Court]." Harrington, 562 U.S. at 102.  In other words, a federal court may not grant habeas relief if any fairminded jurist could find the state court's ruling consistent with relevant Supreme Court precedent.

Finally, habeas relief also is available if the state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); Wood v. Allen, 558 U.S. 290, 293 (2010).  A state court's decision will not be overturned on factual grounds unless this Court finds that the state court's factual determinations were objectively unreasonable in light of the evidence presented in state court.  See Miller–El, 537 U.S. at 340; see also Rice v. Collins, 546 U.S. 333, 341-42 (2006) (the fact that "[r]easonable minds reviewing the record might disagree" does not render a decision objectively unreasonable).  This Court will presume that the state court's factual findings are correct, and Petitioner may overcome that presumption only by clear and convincing evidence.  See 28 U.S.C. § 2254(e)(1); Schriro v. Landrigan, 550 U.S. 465, 473-74 (2007).

## DISCUSSION

Petitioner raises three claims of error in his Petition.  Pet.  First, Petitioner argues that he was denied effective assistance of counsel.  Id. at 6.  Second, Petitioner argues that he is actually innocent.  Id. at 7.  Finally, Petitioner argues that his due process rights were violated due to prosecutorial misconduct when the prosecution failed to correct false and material testimony and withheld evidence.  Id. at 8.

Respondent contends Petitioner's Petition is untimely and that Petitioner procedurally defaulted all of his claims in state court.  Ans. at 8-12.  Respondent further contends that the state court's decision regarding Petitioner's ineffective assistance of counsel claim was neither contrary to, nor an unreasonable application of clearly established federal law.  Id. at 12-14.  Finally, Respondent contends that actual innocence is not a basis for relief and that Petitioner is barred from raising a prosecutorial misconduct claim by his guilty plea.  Id. at 14-16.

**A.     Timeliness of the Petition**

Respondent argues that Petitioner's Petition is untimely, and that Petitioner is not entitled to statutory or equitable tolling because Petitioner filed "his first state habeas petition [] after the federal limitations period had lapsed" and Petitioner had all of the relevant materials he alleges that he did not have and has failed to "explain[] why such material was necessary to assert that counsel failed during plea negotiations." Ans. at 8-10. Respondent further argues that Petitioner's claim of actual innocence "is insufficient to excuse his default of the claims in state court." Id. at 10.

Petitioner contends that his Petition is timely because he was unable to take action any earlier due to the COVID policies in place in prison. Trav. at 4. Specifically, Petitioner claims he was unable to access the law library, internet, or visitors, and had very limited phone calls. Id.

The AEDPA imposes a one-year statute of limitations on federal petitions for writ of habeas corpus filed by state prisoners. 28 U.S.C. § 2244(d) (2006 & Supp. 2016). Section 2244(d)'s one-year limitations period applies to all habeas petitions filed by persons "in custody pursuant to the judgment of a State court." Id. § 2244(d)(1). The one-year limitation period runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Id. § 2244(d)(1)(A)-(D).

Petitioner pleaded guilty on January 21, 2020 and was sentenced on February 21, 2020. Lodgment 6 at 2. Because he did not appeal, the conviction became final sixty days later on

April 20, 2020 and the statute of limitations began to run the next day, April 21, 2020. §
2244(d)(1)(A).  Accordingly, absent tolling, the statute of limitations expired on April 21, 2021.
Petitioner filed his federal habeas petition on February 28, 2022, more than ten months after
the statute of limitations expired.

Sections 2244(d)(1)(B)-(D) do not apply to the instant matter as Petitioner does not
allege that there was an unconstitutional state created impediment that prevented him from
filing his Petition sooner, there is no newly recognized right that the Supreme Court has made
retroactively applicable to the instant matter, and, as discussed in more detail below, the factual
predicate of his claim of innocence could have been discovered previously through the exercise
of due diligence.

1.    Petitioner is Not Entitled to Statutory Tolling

The AEDPA tolls its one-year limitations period for the "time during which a properly filed
application for State post-conviction or other collateral review . . . is pending."  28 U.S.C.
§ 2244(d)(2); Branham v. Montana, 996 F.3d 959, 962 (9th Cir. 2021).  An application for state
post-conviction review is considered "pending" during the interval between the lower state
court's adverse decision and the prisoner's filing of a notice of appeal in the higher state court,
provided that the filing of that notice is timely under state law.  Carey v. Saffold, 536 U.S. 214,
222-25 (2002).  In California, where habeas decisions are not appealed but may be filed
originally in each court, "pending" includes a reasonable time, such as thirty to sixty days,
between a decision and a subsequent filing.  Evans v. Chavis, 546 U.S. 189, 201 (2006) (holding
that an unjustified and unexplained six-month delay is presumptively unreasonable).  However,
the statute of limitations is not tolled after state habeas proceedings are final and before federal
habeas proceedings are initiated.  Additionally, the statute of limitations is not tolled "from the
time a final decision is issued on direct state appeal and the time the first state collateral
challenge is filed because there is no case 'pending' during that interval."  Nino, 183 F.3d at
1006.

Here, Petitioner filed his first state habeas corpus petition on June 10, 2021, after the
federal statute of limitations had expired.  Lodgment 1.  A state habeas petition filed after the

federal statute of limitations period has expired does not toll the statute of limitations.  <u>See</u> <u>Celaya v. Superior Court of California</u>, 2018 WL 1108732, at *5 (S.D. Cal., Feb. 28, 2018) ("state habeas petitions filed after the statute of limitations period ends do not revive a limitations period that has already ended before the state petition was filed") (citing <u>Ferguson v. Palmateer</u>, 321 F.3d 820, 823 (9th Cir. 2003)("section 2244(d) does not permit re-initiation of the limitations period that has ended before the state petition was filed.")).  In addition,  the petitions Petitioner filed in the California Court of Appeal and the California Supreme Court do not toll the statute of limitations period as they were denied as untimely and, therefore, not properly filed.  <u>Poe v.</u> <u>Johnson</u>, 2021 WL 6496834, at *4 (C.D. Cal., Dec. 7, 2021) ("[w]hen a state petition is untimely under state law, it is not "properly filed" and AEDPA's statute of limitations is not tolled.") (citing <u>Pace v. DiGuglielmo</u>, 544 U.S. 408, 417 (2005)).  Accordingly, Petitioner is not entitled to statutory tolling.

### 2.   Petitioner is Not Entitled to Equitable Tolling

The United States Supreme Court has held that the AEDPA's one-year statute of limitations is subject to equitable tolling in appropriate cases.  <u>Holland v. Florida</u>, 560 U.S. 631, 645 (2010).  While equitable tolling is "unavailable in most cases," <u>Miles v. Prunty</u>, 187 F.3d 1104, 1107 (9th Cir. 1999), it is appropriate where a habeas petitioner demonstrates two specific elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." <u>Holland</u>, 560 U.S. at 649 (citing <u>Pace</u>, 544 U.S. at 418).  The bar is set high to effectuate "AEDPA's 'statutory purpose of encouraging prompt filings in federal court in order to protect the federal system from being forced to hear stale claims.'" <u>Guillory v.</u> <u>Rose</u>, 329 F.3d 1015, 10187 (9th Cir. 2003) (citing <u>Carey</u>, 536 U.S. at 226).  Whether a petitioner is entitled to equitable tolling depends on a fact-specific inquiry.  <u>Holland</u>, 560 U.S. at 650.

"The diligence required for equitable tolling purposes is 'reasonable diligence' . . . not 'maximum feasible diligence." <u>Id.</u> at 653 (citations omitted).  The purpose of requiring the petitioner to show diligence "is to verify that it was the extraordinary circumstance, as opposed to some act of the petitioner's own doing, which caused the failure to timely file." <u>Doe v. Busby</u>, 661 F.3d 1001, 1012–13 (9th Cir. 2011) (citations omitted).  To determine whether a petitioner

has been diligent, courts consider "the petitioner's overall level of care and caution in light of his or her particular circumstances." Id. at 1013.

Petitioner alleges that he has diligently pursued his rights but that the extraordinary circumstances of the COVID-19 pandemic stood in his way. Trav. at 5. As noted by other courts in this district, "there is scant legal authority analyzing whether the COVID-19 pandemic constitutes an extraordinary circumstance that merits equitable tolling of habeas corpus claims." Valles v. Allison, 2022 WL 3327386, at *4–5 (S.D. Cal., Aug. 11, 2022); see also Roberts v. Allison, 2022 WL 4280657, at *8–9 (S.D. Cal., Sept. 15, 2022). Thus far, courts within the Ninth Circuit have concluded that "[t]he COVID-19 pandemic, in itself, 'does not automatically warrant equitable tolling for any petitioner who seeks it on that basis.'" Cervantes v. Cisneros, 2022 WL 4082488, at *5 (C.D. Cal., July 28, 2022) (quoting United States v. Rivera, 2022 WL 1434650 at *3 (E.D. Wash. May 5, 2022) (quoting Olsen v. United States, 2021 WL 329462 at *3, (D. Idaho Feb. 1, 2021)); see also Valles, 2022 WL 3327386, at *4–5 ("general 'claims of prison lockdowns and lack of access to the prison law library as a result of the COVID-19 pandemic alone are insufficient to amount to extraordinary circumstances' for equitable tolling purposes.") (quoting Dragasits v. Covello, 2022 WL 207730 (S.D. Cal. Jan. 24, 2022) (citing Shephard v. Asuncion, 2021 WL 6496744, at *10 (C.D. Cal. Nov. 3, 2021) (finding petitioner was not entitled to equitable tolling during alleged "total lockdown" due to COVID-19 between March 2020 and August 2020) and Sholes v. Cates, 2021 WL 5567381, at *4 (E.D. Cal. Nov. 29, 2021) (concluding prisoner not entitled to equitable tolling during COVID outbreak which caused the law library to be closed "for months" and thereafter open with only limited access)). Extraordinary circumstances due to COVID-19 will only be found where a petitioner "sets forth 'fact-specific circumstances related to the pandemic that hindered his ability to timely file a habeas petition.'" Valles, 2022 WL 3327386, at *4–5 (citing Chapman-Sexton v. United States, 2021 WL 292027 at *3 (S.D. Ohio Jan. 28, 2021)).

Here, Petitioner fails to provide fact-specific pandemic-related circumstances that hindered his ability to file a habeas petition. See Pet., Trav. Petitioner generally argues that the pandemic resulted in prison lock downs, quarantines, no visitation, and limited law library

access.  Trav. at 4.  Petitioner also argues that he had limited access to phone calls and internet, no lawyer representing him, and that relying on "snail mail" in prison was difficult as it tends to move more slowly than mail outside of prison.  Id.  However, Petitioner does not explain how his access to the law library was limited, the length of those restrictions, if, when, and how he attempted to access the law library or obtain legal research materials, how the lack of access to the library, phone calls, and standard mail impeded his ability to timely file his petition, or what systems were in place for obtaining legal materials such as a library paging system and if he tried to utilize those systems or why those systems were insufficient.  Also, apart from stating that he has "been diligently pursuing [his] rights[,]" Petitioner fails to demonstrate his alleged diligence.  Id. at 5.  Accordingly, Petitioner is not entitled to equitable tolling.  See Cervantes, 2022 WL 4082488, at *6 (finding that Petitioner did not exercise reasonable diligence in pursuing his federal habeas claims throughout the limitations period, as required for equitable tolling where petitioner did not send any forms requesting access to the library and had no legal mail activity between October 27, 2020 – December 6, 2021) (citing Davis v. Kibler, 2022 WL 2121907, at *7 at *21 (Feb. 24, 2022) ("Petitioner has not carried his burden of showing reasonable diligence throughout the limitations period, as he offers no facts showing he attempted to pursue his claims before or during the COVID-19-related lockdowns and purported fires ....") and Shepherd, 2021 WL 6496744 at *9 (finding that petitioner who did "not allege that he attempted to obtain legal materials from the library, either before or during the lockdown" failed to demonstrate reasonable diligence)).

Additionally, Petitioner's limited access to phone and internet and the use of snail mail are likely unrelated to the pandemic.  Access to phones, internet, and email are limited as a function of being in prison, separate and apart from the COVID-19 pandemic.  Those are not extraordinary circumstances as they are standard limitations applicable to most if not all inmates. See Hill v. Giurbino, 2007 WL 2781174, at *9 (S.D. Cal. Sept.19, 2007) (equitable tolling denied where prisoner argued "limited access to the law library and lack of access to law books and internet databases for conducting research").  Similarly, "[c]ourts generally hold that impeded law library access does not qualify as an extraordinary circumstance warranting tolling."

Roberts, 2022 WL 4280657, at *9 (citing Ramirez, 571 F.3d 993, 998 (9th Cir. 2009) ("Ordinary prison limitations on [petitioner's] access to the law library and copier[,] quite unlike the denial altogether of access to his personal legal papers[,] were neither 'extraordinary' nor made it 'impossible' for him to file his petition in a timely manner. Given even the most common day-to-day security restrictions in prison, concluding otherwise would permit the exception to swallow the rule-according to [petitioner's] theory, AEDPA's limitations period would be tolled for the duration of any and every prisoner's stay in administrative segregation, and likely under a far broader range of circumstances as well."); and Norwood v. Lockyer, 390 F. App'x 762, 763 (9th Cir. 2010) (finding that "limited law library access, being moved to different cells, [and] temporary lockdowns" are not "out of the ordinary for prison life [...] that would have made it 'impossible' to file on time" and thus not a basis for equitable tolling)).   Finally, the fact that Petitioner does not have a lawyer is not an extraordinary circumstance warranting equitable tolling.  Robinson v. Marshall, 405 Fed. Appx. 241, 242 (9th Cir. 2010) ("pro se status is not, by itself, an extraordinary circumstance warranting equitable tolling"); see also Bartholomew v. Carey, 308 Fed. Appx. 57, 58 (9th Cir. 2009) ("a pro se petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling") (citing Rasberry v. Garcia, 448 F.3d 1150, 1154 (9th Cir.2006)).  Accordingly, Petitioner is not entitled to equitable tolling and his Petition is untimely.  The Court **RECOMMENDS** the Petition be **DENIED** because it is untimely.

**B.    Procedural Default**

Respondent argues that Petitioner's claims are procedurally defaulted as they were denied by the state court as untimely and that as a result, Petitioner cannot obtain relief on any of his claims.  Ans. at 10-12 (citing Walker v. Martin, 562 U.S. 307, 317 (2011) ("California's timeliness requirement qualifies as an independent state ground adequate to bar habeas corpus relief in federal court").  Petitioner contends that his claims should not be procedurally defaulted because he was sentenced at the beginning of the COVID-19 pandemic and lacked access to the law library and, at times, the phone.  Trav. at 5-6.

Procedural default is an affirmative defense, and Respondent must first "adequately

11

[plead] the existence of an independent and adequate state procedural ground ...." Bennett v. Mueller, 322 F.3d 573, 586 (9th Cir.2003).  In order to place the defense at issue, Petitioner must then "assert [ ] specific factual allegations that demonstrate the inadequacy of the state procedure ...." Id.  The "ultimate burden" of proving procedural default, however, belongs to the state. Id. If the state meets its burden under Bennett, federal review of the claim is foreclosed unless Petitioner can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722 (1991).

A state procedural rule is "independent" if the state law basis for the decision is not interwoven with federal law. Michigan v. Long, 463 U.S. 1032 (1983); Harris v. Reed, 489 U.S. 255 (1989). A ground is "interwoven" with federal law if the state has made application of the procedural bar dependent on an antecedent ruling on federal law such as the determination of whether federal constitutional error has been committed. See Ake v. Oklahoma, 470 U.S. 68, 75 (1985). "To qualify as an 'adequate' procedural ground, a state rule must be 'firmly established and regularly followed.'" Walker v. Martin, 562 U.S. 307, 316 (2011) (quoting Beard v. Kindler, 558 U.S. 53, 61 (2009)).  The United States Supreme Court has concluded that the untimeliness rule of Robbins is an independent and adequate state procedural rule.  Id. at 316-321.

The federal habeas court may still reach the merits of a procedurally defaulted claim if the petitioner can demonstrate cause for his failure to satisfy the state procedural rule and prejudice arising from the default, or if he can demonstrate that a fundamental miscarriage of justice would result from the Court not reaching the merits of the defaulted claims.  Coleman, 501 U.S. at 750.  "Cause' for a procedural default exists where 'something external to the petitioner, something that cannot fairly be attributed to him impeded his efforts to comply with the State's procedural rule.'" Sanai v. Villanueva, 2021 WL 6496783, at *4 (C.D. Cal., Nov. 15, 2021) (quoting Maples v. Thomas, 565 U.S. 266, 280 (2012)).  A showing of prejudice requires Petitioner to establish that the error at trial "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Id. (quoting Nguyen v. Curry, 736 F.3d 1287, 1292 (9th Cir. 2013)).

The last court to review Petitioner's claims was the California Supreme Court, which issued a one-sentence denial of the petition so this Court must "look through" to the California Court of Appeal's decision.  Lodgment 8 ("The petition for review is denied").

The California Court of Appeal denied Petitioner's petition as procedurally barred and untimely.  Lodgment 6.  The Court stated that:

> Dones is not entitled to relief. First, Dones's petition is procedurally barred. Dones could have sought a certificate of probable cause to challenge the stipulated sentence on appeal (Pen. Code, § 1237.5; *People v. Panizzon* (1996) 13 Cal.4th 68, 73), but did not. "[A] litigant is not entitled to raise an issue on habeas corpus after having failed to raise the same issue on direct appeal." (*In re Reno* (2012) 55 Cal.4th 428, 490 (*Reno*).) Furthermore, "[a] defendant who challenges the validity of [a guilty] plea on the ground that trial counsel rendered ineffective assistance in advice regarding the plea may not circumvent the requirements of section 1237.5 by seeking a writ of habeas corpus." (*In re Chavez* (2003) 30 Cal.4th 643, 651.) Dones's "failure to affirmatively address the applicability of procedural obstacles to consideration of the claims raised in [his] habeas corpus petition justifies summary denial without the court's consideration of the merits." (*Reno, supra*, at p. 511.)
>
> The petition is also barred as untimely. A "habeas corpus petition must be filed within a reasonable time after the petitioner or counsel knew, or with due diligence should have known, the facts underlying the claim as well as the legal basis of the claim." (*In re Harris* (1993) 5 Cal.4th 813, 828, fn. 7.) Petitioner was sentenced in February 2020, and the present petition was not  filed until June 2021. To account for this delay, Dones contends that as of May 2021, his lawyer had not furnished a full copy of his original case file. However, Dones's own evidence indicates that a copy of the file was provided. Although Dones alleges the copy of the file is incomplete because "character references" from the file were not provided, he has not explained what these character references are, why he believes the references exist, or why the references are relevant to the present petition. Overall, he has failed to explain why the lack of the original file delayed the filing of this petition.

Id. at 2-4.

Respondent has satisfied her burden of adequately pleading the existence of an independent and adequate state procedural ground for the affirmative defense of procedural

default.  Respondent notes that Petitioner's state habeas petitions were denied as untimely and procedurally defaulted. "The Ninth Circuit has held that California's untimeliness rule is an independent state procedural ground because it is not interwoven with federal law." <u>Fink v. Rosa</u>, 2022 WL 141104, at *4 (S.D. Cal., Jan. 14, 2022) (citing <u>Bennett</u>, 322 F.3d at 581). Because Petitioner's claims were untimely and inadequate to support the judgment, Petitioner's claims are procedurally barred unless he rebuts the evidence. <u>Coleman</u>, 501 U.S. at 750. Petitioner fails to do so as he has not demonstrated cause for his failure to satisfy the state procedural timeliness rule and prejudice arising from the default or that a failure to consider his claims will result in a fundamental miscarriage of justice.  Rather, Petitioner merely recites the same pandemic-related limitations discussed above, which are insufficient for the reasons discussed in Section A.

In addition, as the Court of Appeal noted, Petitioner did not seek a certificate of probable cause.  Lodgment 6.  "Failure to obtain a certificate of probable cause is an independent and adequate state ground for finding a procedural default." <u>Jenkins v. Warden CIM-MSF</u>, 2012 WL 4754725, at *10 (S.D. Cal., Aug. 7, 2012) (citing <u>Mitchell v. Superior Ct.</u>, 632 F.2d 767, 773 (9th Cir.1980) (stating that California Penal Code § 1237.5 governs the right to appeal after a guilty plea in state court); and <u>Delgado v. Lewis</u>, 223 F.3d 976, 980 (9th Cir.2000) (explaining that a probable cause certificate is a state "prerequisite" to filing an appeal from a guilty plea)). Accordingly, Petitioner's claims are procedurally barred and the Court **RECOMMENDS** the Petition be **DENIED** on this basis.

## C.  Ineffective Assistance of Counsel

Petitioner alleges that he was denied effective assistance of counsel because his attorney, Andrew Limberg, failed to properly investigate the case or call any witnesses.  ECF No. 1-3 at 39-40, Attachment 1.  Specifically, Petitioner asserts that Mr. Limberg advised Petitioner to plead guilty and failed to (1) investigate and call Cindy Almestica as a witness, (2) investigate or call a medical expert on the sexual abuse of children, (3) introduce evidence of Petitioner's factual innocence or to raise doubt about Petitioner's guilt, (4) cross examine the investigating detective, and (5) use lab results to substantiate Petitioner's innocence.  <u>Id.</u>

Respondent contends that the state courts reasonably applied <u>Strickland</u> in rejecting Petitioner's ineffective assistance of counsel claim and that the state court's decision was neither contrary to nor an unreasonable application of clearly established federal law.  Ans. at 12.

Petitioner presented this claim to the Superior Court of California, County of San Diego in his first petition.  Lodgment 1.  The court concluded that:

> In his claims regarding ineffective assistance of counsel he fails to provide any facts which would demonstrate unprofessional errors by his attorney. Petitioner could have received a sentence of 25-years-to-life if the jury found his testimony lacked credibility. His attorney's advice regarding his risk of conviction and 25-year-to-life sentence do not appear to be ineffective. The evidence Petitioner claims would have proven his innocence would require the jury to find his testimony to be credible regarding when he caught gonorrhea, as well as his activities in the shower with the victim. He has failed to show that, assuming there were any errors, there is any probability that the results of the proceeding would have been different.

Lodgment 2.

Petitioner raised the claim again in a petition of writ of habeas corpus in the California Court of Appeal.  Lodgment 5. The California Court of Appeal, the last state court to issue a reasoned decision on this claim, rejected Petitioner's arguments on habeas review.  Lodgment 6.  The appellate court explained:

> As to his claim of ineffective assistance of counsel, the evidence provided with the petition is not persuasive. Dones's lawyer advised Dones that he was facing a sentence of 25-years-to-life if he refused the plea deal, advice that accurately conveyed the potential consequences of taking the case to trial and was not ineffective. Although Dones claims he is innocent, his theory rests on his conclusory assertion that he contracted gonorrhea from the victim's mother on a particular date. However, had Dones rejected the plea and gone to trial, he risked the jury discrediting his testimony about when and how he contracted gonorrhea, particularly since Dones admitted during the investigation to having multiple sexual partners. Further undermining Dones's assertion of innocence was his admission during the investigation that his penis touched his daughter during a shower, and his aunt's statement to police indicating Dones had a history of sexually

abusing younger family members. Although Dones indicates his aunt has since recanted her statement, there is no declaration from the aunt confirming she falsified her statement during the investigation. Dones also provides a list of potential witnesses he contends his lawyer failed to pursue. However, the only declarations provided from the list of potential witnesses are from his mother and wife, who are inherently unreliable and only provide conclusory assertions about Dones's innocence. For these reasons, Dones has failed to objectively show that trial counsel's conduct rises to the level of constitutionally inadequate assistance during the plea bargain stage. (*In re Vargas* (2000) 83 Cal.App.4th 1125, 1140 ["[W]hen defendants claim they received ineffective assistance of counsel at the plea bargain stage, they must show that had they received effective representation, they would not have accepted the offer. [Citations.] A defendant's statement to that effect is not sufficient. Rather, there must be some objective showing."]; *Duvall, supra*, 9 Cal.4th at p. 474 [conclusory allegations made without any explanation of their factual bases are insufficient to state a prima facie case or warrant an evidentiary hearing].)

Id. at 4-5.

Under clearly established federal law, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington, 466 U.S. 668, 686 (1984).   To prove ineffective assistance of counsel, a defendant must show: (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense.  Id. at 687.  The proper measure of attorney performance is "simply reasonableness under prevailing professional norms."  Id. at 688.  "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance;" that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  Id. at 689-690.  To determine whether errors of counsel prejudiced the defense, a court "must consider the totality of the evidence before the judge or jury" and consider whether "the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors."  Id. at 696.   The Court need not address both the deficiency prong and the

prejudice prong if the defendant fails to make a sufficient showing of either one.  Id. at 697.

The United States Supreme Court has held that "the two-part *Strickland v. Washington* test applies to challenges to guilty plea based on ineffective assistance of counsel." Uhuru v. Burton, 2022 WL 1478515, at *4 (S.D. Cal., May 9, 2022) (quoting Hill v. Lockhart, 474 U.S. 52, 58 (1985).  When discussing the Strickland prejudice inquiry in cases where a petitioner claims his guilty plea was involuntary as a result of ineffective assistance of counsel, the Supreme Court has said

> [t]he second, or "prejudice," requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

> In many guilty plea cases, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial.... [W]here the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the "prejudice" inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial.

Hill, 474 U.S. at 59.

The Supreme Court has held that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Wiggins v. Smith, 539 U.S. 510, 520 (2003) (quoting Strickland, 466 U.S. at 673). Choosing to forego a particular investigation must be a "reasoned choice." Id. at 510, 518. While a lawyer's failure to investigate crucial witnesses may indicate an inadequate investigation, "counsel need not interview every possible witness to have performed proficiently." Riley v. Payne, 352 F.3d 1313, 1318 (9th Cir. 2003) (citing LaGrand v. Stewart, 133 F.3d 1253, 1274 (9th Cir. 1998) (concluding there was no prejudice where trial counsel had personally interviewed the one eyewitness and read investigative reports and transcripts of interviews with all other witnesses)); see also Huffington v. Nuth, 140 F.3d 572, 580 (4th Cir. 1998) (noting that "the failure to investigate everyone whose name happens to be mentioned by the defendant does

not suggest ineffective assistance."). "Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable...." <u>Strickland</u>, 466 U.S. at 690.

### 1.   Ineffective Assistance of Counsel – Guilty Plea

"The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" <u>Hill</u>, 474 U.S. at 56 (quoting <u>North Carolina v. Alford</u>, 400 U.S. 25, 31 (1970)). Voluntariness is a question of law requiring concrete evidence in the record in light of the circumstances surrounding the plea. <u>Uhuru v. Burton</u>, 2022 WL 1478515, at *5 (S.D. Cal., May 9, 2022) (citing <u>Marshall v. Lonberger</u>, 459 U.S. 422, 431-32 (1983)).

Here, Petitioner has not satisfied either prong of the <u>Strickland</u> test. Petitioner argues that his attorney coerced him into pleading guilty by informing Petitioner that the DA had a 98% conviction rate, that a jury tends to believe the victim, and that Petitioner was facing 25-years-to-life if he lost at trial. ECF No. 1-3 at 39-40. The attorney advised Petitioner that he could accept the 10 year plea deal or gamble with the longer sentence. <u>Id.</u> As explained by the state appellate court, Petitioner has not established that counsel's statements were inaccurate or unreasonable. Lodgment 6. Petitioner also claims that the incubation period for gonorrhea, as well as the alleged method of transmission, prove that he is not the person who infected his infant daughter. ECF No. 1-3 at 39-40; Traverse at 1-3. Again, as explained by the appellate court, Petitioner's claims rely on a decisionmaker believing Petitioner's story about when and how he was infected. Lodgment 6 at 4. Moreover, the information regarding the incubation period was known by Petitioner prior to his guilty plea as the treating physician stated it during the preliminary hearing. Lodgment 5 at Reporter's Transcript Pages 1-38 at 32. Similarly, contrary to Petitioner's arguments, the treating physician did not testify that Petitioner could not have given his daughter gonorrhea while they were in the shower. Traverse at 3. Rather, the physician indicated that it was implausible that the child could have been infected if she merely slipped from her father's arms during a shower and came in contact with his penis and opined that transmission would require the child's genital mucous membranes to come in contact with

the tip of Petitioner's erect, infected penis.  Lodgment 5 at Reporter's Transcript Pages 1-38 at 33-34.  Finally, while Petitioner claims that his aunt provided false information regarding Petitioner's history of sexually abusing young family members and has since recanted her statement, Petitioner provides no evidence to support his claims.[1]   Pet.; Traverse; see also, Lodgment 6.  As such, Petitioner has not established that Mr. Limberg provided inaccurate or unreasonable advice or that there is medical or testimonial evidence that undermines his advice regarding the unlikelihood that Petitioner would have been successful at trial.  As a result, Petitioner has not established that Mr. Limberg provided deficient representation and has not satisfied the first element of the Strickland test.

Petitioner also has not satisfied the second Strickland element of prejudice.  For the reasons set forth above and in the state courts' opinions, Petitioner has not established that "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59.  The same evidence also fails to establish that Petitioner would have had a reasonable chance of obtaining a more favorable result if he had gone to trial rather than plead guilty.  Hill, 474 U.S. at 59 (noting that the assessment of prejudice will depend "in large part on a prediction whether the evidence likely would have changed the outcome of trial").  The same evidence does not support Petitioner's claim that he was coerced by Mr. Limberg to plead guilty.  Finally, the ten-year deal set forth in the plea agreement was an intelligent choice in light of the overwhelming evidence indicating guilt and the 25-years-to-life sentence available if he was unsuccessful at trial.  See United States v. Astorga, 457 F. App'x 698, 700 (9th Cir. 2011) (finding no prejudice from counsel's performance where the defendant pled guilty and received sentence of 70 months, when he faced a sentence of 120 months if he had proceeded to trial because he was likely to be convicted); Eschief, 2022 WL 1542085, at *10 (finding Petitioner's

---

[1] Petitioner claims that his aunt's statement was false and based on second-hand information and hearsay.  Trav. at 7-9.  However, this is an unsupported conclusory allegation that cannot support a claim for habeas relief due to ineffective assistance of counsel.  See Eschief v. United States, 2022 WL 1542085, at *9 (D. Ariz., Feb. 18, 2022).

claim of ineffective assistance of counsel to be without merit where Petitioner was sentenced to a term of 7.5 years imprisonment pursuant to a plea agreement but would have received a minimum sentence of 12 years if found guilty at trial and the weight of evidence of his guilt was substantial).

Accordingly, the Court does not find that the state court's analysis and decision denying Petitioner's ineffective assistance of counsel claim was "contrary to" nor an "unreasonable application of" clearly established federal law or based on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

### 2. Ineffective Assistance of Counsel – Failure to Investigate

Petitioner also has not shown that his counsel's alleged failure investigate and examine witnesses and failure to investigate evidence showing Petitioner's innocence was a deficient performance by counsel that prejudiced his defense. Petitioner alleges that his counsel should have investigated and called Cindy Almestica as a witness since her testimony was the circumstantial evidence used against him. Trav. at 7. Given that Petitioner does not provide any evidence that Ms. Almestica's testimony would have differed in some substantial way from the statement she provided to the San Diego Police Department which contained allegations that Petitioner had previously raped several people, sexually abused family members, and was a sexual predator, and the lack of evidence regarding the alleged false nature of Ms. Almestica's statement, the state court's finding that Petitioner failed to show that his counsel's conduct rose to the level of constitutionally inadequate assistance during the plea bargain stage was not "contrary to" nor an "unreasonable application of" clearly established federal law or based on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Lodgment 6.

Petitioner generally alleges that his counsel failed to investigate and introduce evidence demonstrating his factual innocence and specifically identifies expert testimony stating that it was not plausible that Petitioner gave gonorrhea to his daughter. ECF No. 1-3 at 39-40, Attachment 1. Petitioner also alleges that his counsel was ineffective because he failed to use police reports to cross examine witnesses and because he failed to examine the crime scene,

prepare for trial, or use laboratory results to substantiate his claims of innocence. Id. Petitioner does not state what an inspection of his shower or the crime scene would have added to his defense and his counsel's decision to forgo such an investigation does not appear unreasonable. Petitioner's counsel was not deficient for failing to prepare for trial because Petitioner plead guilty and there was no trial. Additionally, Petitioner does not provide any specific allegations regarding the laboratory results his counsel should have used to substantiate Petitioner's innocence. Id. It is unclear what lab results he is referring to and how the results would have substantiated his claims of innocence. Petitioner makes a broad conclusory statement that does not provide specific allegations of deficient performance or prejudice as is required to demonstrate ineffective assistance of counsel for failure to investigate.

For the reasons set forth above, the Court finds that the state court's decision regarding Petitioner's ineffective assistance of counsel claims was not "contrary to" nor an "unreasonable application of" clearly established federal law or based on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d) and **RECOMMENDS** that Petitioner's Petition be **DENIED** on this ground.

D.   Prosecutorial Misconduct

Petitioner argues that the prosecution engaged in misconduct when it failed to correct materially false testimony and withheld evidence thereby violating Brady v. Maryland and his right to due process. Pet. at 8. This allegation stems from Petitioner's claim that the only evidence presented against Petitioner was circumstantial and based on hearsay and Petitioner did not get to confront the witness, Ms. Almestica. Id.

Respondent contends that Petitioner is procedurally barred from raising a prosecutorial misconduct claim as a result of his guilty plea. Ans. at 15. "A valid guilty plea [ ] renders irrelevant—and thereby prevents the defendant from appealing—the constitutionality of case-related government conduct that takes place before the plea is entered." Id. (quoting Class v. United States, 138 S. Ct. 798 (2018)).

"When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating

to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Tollett v. Henderson, 411 U.S. 258, 267 (1973); see also United States v. Broce, 488 U.S. 563, 574 (1989).  This is because "a guilty plea represents a break in the chain of events which has preceded it in the criminal process."  Id.  After pleading guilty, almost the only pre-plea challenges a Petitioner may bring are whether the plea was voluntary, if he received ineffective assistance of counsel in deciding to plead guilty, and if there was a jurisdictional defect eliminating the government's power to prosecute.  Lucas v. Koenig, 2022 WL 3970003, at *7 (C.D. Cal., May 15, 2022) (citing Broce, 488 U.S. at 569; Hill, 474 U.S. at 56; and Bousley v. United States, 523 U.S. 614, 621 (1998)).  Here, Petitioner "pleaded guilty to Penal Code section 288, subdivision (a), lewd act on a child with enhancements for Penal Code section 12022.7, subdivision (d), great bodily injury on a child under 5 and Penal Code section 1203.066, subdivision (a)(8), substantial sexual conduct on a child under 14."[2]  Lodgment 6.  Accordingly, Petitioner is procedurally barred from raising his prosecutorial misconduct claim.

Furthermore, while there is an exception that permits claims of constitutional violations before a guilty plea if the guilty plea was involuntary and unintelligent because it was made in the absence of improperly withheld Brady material, that is not the case here, where Petitioner has failed to identify any improperly withheld Brady material.  Marr v. Yates, 2010 WL 3386424, at *8 (C.D. Cal., July 6, 2010) ("[a]s to the Brady claim, habeas relief is not warranted.  Petitioner has made no showing that any *Brady* material even existed. In light of this, he cannot show that "but for the failure to disclose the Brady material, [he] would have refused to plead and would have gone to trial.") (citing Smith v. Baldwin, 510 F.3d 1127, 1148 (9th Cir. 2007)).  Petitioner discusses Brady but does not actually identify any material that was withheld in violation of Brady.  ECF No. 1-6 at 2-4, Attachment 3.  Instead, Petitioner makes vague comments like "the prosecution failed to adequately investigate and introduce into evidence factual guilt or to raise sufficient doubt as to that question of innocence" and "[t]he state failed to investigate, present

---

[2] The Court notes that a copy of the transcript of Petitioner's plea is not included in the lodgments, but Petitioner admits that he pled guilty and the plea is referenced in various court orders included in the lodgments.

key witnesses on the case but most importantly use lab results which in my case only supports my innocence." Id.  Under Brady, a person is prejudiced if the evidence withheld is material, which in the case of a person entering a plea before trial, means that "there is a reasonable probability that but for the failure to disclose the *Brady* material, the defendant would have refused to plead and would have gone to trial." Smith, 510 F.3d at 1148.  Petitioner's vague allegations of possible lab results and witness testimony are insufficient to show he would have refused to plead guilty and instead elected to go to trial.  Accordingly, the Court **RECOMMENDS** that Petitioner's Petition be **DENIED** on this ground.

E.     Actual Innocence

Petitioner argues that he is actually innocent of the crime to which he pled guilty.  Pet. at 7.  In support, Petitioner states that Dr. Suresh's testimony proves that he could not have given his daughter gonorrhea because of the two to seven day incubation period for the disease and because he did not have any sexual contact with his daughter.  ECF No. 1-5 at 14, Attachment 2.  Petitioner notes that his daughter's examination revealed no internal or external physical injuries and that her hymen was intact.  Id.

Respondent contends that "[i]nnocence is not an independent basis for relief" and that the state court's decision was neither contrary to nor an unreasonable application of clearly established federal law.  Ans. at 14-15.

Petitioner presented this claim to the California Court of Appeal and to the California Supreme Court.  Lodgments 5 and 7.  The claim was summarily denied by the California Supreme Court so this Court must "look through" to the California Court of Appeal's decision, which concluded that:

> Dones has not submitted any "new evidence" establishing his innocence. To warrant habeas corpus relief based on "new evidence," the petitioner must provide evidence "that is credible, material, presented without substantial delay, and of such decisive force and value that it would have more likely than not changed the outcome at trial." (Pen. Code, § 1473, subd. (b)(3)(A).) "New evidence" must be "evidence that has been discovered after trial, that could not have been discovered prior to trial by the exercise of due diligence, and is admissible and not merely cumulative, corroborative, collateral, or impeaching." (*Id.*, subd. (b)(3)(B).) Most of the medical information Dones provides related to gonorrhea is dated before he

accepted the plea deal, and none of the evidence contains any new information that was previously unavailable. In fact, Dones expressly agrees with the testimony provided by the pediatrician at the preliminary hearing regarding the incubation period for gonorrhea, and he admits the research he has provided with the petition merely supports the witness's testimony. Additionally, although Dones claims his aunt recanted her statement "this year" when she visited him in prison, he does not provide a declaration from his aunt confirming she recanted her full statement.

Lodgment 6.

The Supreme Court has not established the existence of a freestanding actual-innocence claim on federal review of a non-capital habeas case. See Toney v. Sandor, 2012 WL 8023753, at *5 (S.D. Cal. Oct. 26, 2012) (citing District Attorney's Office for Third Judicial District v. Osborne, 557 U.S. 52, (2009) (whether federal constitutional right to be released upon proof of "actual innocence" exists "is an open question")). "A petitioner asserts a freestanding claim of actual innocence by claiming they are factually innocent, independent of any alleged constitutional violations that may have occurred." Torres v. Diaz, 2020 WL 7869488, at *21 (S.D. Cal., Dec. 31, 2020) (citing Carriger v. Stewart, 132 F.3d 463, 476 (9th Cir. 1997)). If such a claim exists, a petitioner would have to meet an "extraordinarily high" and "truly persuasive" showing in order to establish he was actually innocent of the charges of which he was convicted. Poizner v. Frauenheim, 2015 WL 9094128, at *10 (S.D. Cal. Dec. 15, 2015) (citing Herrera v. Collins, 506 U.S. 390, 400-17 (1993) ). A petitioner must offer new, reliable evidence of an alleged constitutional error that probably resulted in the conviction of an innocent person. See Rivera v. Montgomery, 2014 WL 7183669, at *13 (S.D. Cal. Dec. 16, 2014) (citing Schlup, 513 U.S. at 324, 327). A petitioner's claim of actual innocence must be supported "with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." Id. (quoting Schlup, 513 U.S. at 324). This evidence must be factual and indicate actual innocence, "as opposed to legal innocence as a result of legal error." Gandarela v. Johnson, 286 F.3d 1080, 1085 (9th Cir. 2001) (citing Schlup, 513 U.S. at 321). To establish actual innocence, a petitioner must demonstrate that, in light of all the evidence, "it is more likely than not that no reasonable juror would have convicted him." Tryals v. United States, 2017 WL 3438558, at *8 (S.D. Cal. Aug. 9, 2017)

1  (quoting Schlup, 513 U.S at 327 (1995)).

2  Petitioner fails to establish that he is entitled to habeas relief due to actual innocence. As

3  an initial matter, Petitioner has not shown that he suffered an independent constitutional

4  violation.   Accordingly, his actual innocence claim is freestanding, and he must make an

5  "extraordinarily high" and "truly persuasive" showing in order to establish he is actually innocent

6  of the charges of which he pled guilty.  Poizner, 2015 WL 9094128, at *10 (citing Herrera, 506

7  U.S. at 400-17).

8  Second, because the Supreme Court has never held that a free-standing actual innocence

9  claim exists, the denial of such a claim by the state court cannot be contrary to, or an

10  unreasonable application of, clearly established Supreme Court law.  See Prescott v. Santoro,

11  53 F.4th 470 (9th Cir. Nov. 15, 2022); see also Poizner, 2015 WL 9094128 at *10 (finding that

12  "because the Supreme Court has never squarely held that a free-standing actual innocence claim

13  exists, the state court's denial of such a claim cannot be contrary to, or an unreasonable

14  application of, clearly established Supreme Court law") (citing Carey v. Musladin, 549 U.S. 70,

15  77 (2006); Knowles v. Mirzayance, 556 U.S. 111, 122 (2009); and Alberni v. McDaniel, 458 F.3d

16  860, 866 (9th Cir. 2006) (finding that when the Supreme Court has expressly stated that whether

17  a particular claim exists is an open question, the state court cannot be said to have acted in an

18  objectively unreasonable manner by denying that claim)).  Relief can only be granted under the

19  "unreasonable application of clearly established federal law" prong of 2254(d)(2).  Prescott, --

20  53 F.4th 470 at 479.  To meet this prong, "a petitioner may challenge the substance of the state

21  court's findings and attempt to show that those findings were not supported by substantial

22  evidence in the state court record.  Second, a petitioner may challenge the fact-finding process

23  itself on the ground that it was deficient in some material way." Id.  Petitioner has done neither.

24  Finally, Petitioner has failed to provide new, reliable evidence of an alleged constitutional

25  error or new reliable evidence that was not available prior to his guilty plea. The evidence

26  Petitioner provides is comprised of Petitioner's statement to police during the investigation [see

27  ECF No. 1-5 at 18-30, Attachment 2], a declaration from Petitioner's wife [id. at 31-32], and

28  several articles about gonorrhea [id. at 33-158].  With respect to the statement from Petitioner,

that is not new evidence and does not establish Petitioner's innocence, only his version of events at the time.  Similarly, the declaration from Petitioner's wife and the attached articles do not contain any new evidence that was not available at the time of Petitioner's arrest and guilty plea.  As his wife herself declares, the articles were made available to Petitioner's counsel when he was initially arrested and therefore do not contain new information that could not have been discovered before Petitioner's guilty plea.  Even if the articles had not existed before, the content of the articles alone does not establish actual innocence.

Petitioner has not shown that the state court decision rejecting his claim of actual innocence was contrary to or an unreasonable application of clearly established federal law. Accordingly, the Court **RECOMMENDS** that Petitioner's Petition be **DENIED** on this ground.

## **CONCLUSION AND RECOMMENDATION**

For all the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the District Court issue an Order: (1) approving and adopting this Report and Recommendation, and (2) directing that Judgment be entered denying the Petition.

**IT IS HEREBY ORDERED** that any written objections to this Report must be filed with the Court and served on all parties no later than **January 27, 2023**.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **February 10, 2023**.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998).

Dated:  12/28/2022

Hon. Barbara L. Major
United States Magistrate Judge